UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| EMILY PENNER, | Case No. 21-12031 |
| Plaintiff, | Stephen J. Murphy, III<br>United States District Judge |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | Curtis Ivy, Jr.<br>United States Magistrate Judge |
| Defendant. | |
| _____/ | |

### REPORT AND RECOMMENDATION
### CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 12, 15)

Plaintiff Emily Penner ("Penner") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for child's insurance benefits under the Social Security Act (the "Act"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (ECF No. 12), the Commissioner's cross-motion for summary judgment (ECF No. 15), and the administrative record (ECF No. 9).

For the reasons below, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 12), **GRANT** Defendant's motion for summary judgment (ECF No. 15), and **AFFIRM** the Commissioner's decision.

I.       **DISCUSSION**

    A.       **Background and Administrative History**

Plaintiff alleges her disability began on November 30, 2009, at the age of 17. (ECF No. 9, PageID.66). She applied for child's insurance benefits on March 27, 2019. (*Id.*). In her disability report, she listed several ailments which diminished her ability to work. (*Id.* at PageID.216). The ailments included: migraines, chronic daily headaches, endometriosis, fibromyalgia, chronic fatigue, orthostatic intolerance, dizziness, lightheadedness, brain fog, chronic sinusitis, frequent infections, undiagnosed immune system dysfunction, allergies, asthma, acid reflux, depression, and portal vein aneurysm. (*Id.*). Her application was denied on September 10, 2019. (*Id.* at PageID.66).

Following the denial, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"). (*Id.*). On October 15, 2020, ALJ Kevin W. Fallis held a telephonic hearing, at which Plaintiff and a vocational expert ("VE"), Heather Benton, testified. (*Id.*). On December 23, 2020, the ALJ issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act before January 1, 2014, the date she attained age 22. (*Id*. at PageID.76).

Plaintiff later submitted a request for review of the hearing decision. (*Id.* at PageID.29). On July 9, 2021, the Appeals Council denied Plaintiff's request for

review. (*Id*.). Thus, the ALJ's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on September 1, 2021.

**B.     Plaintiff's Medical History**

After complaints of severe pelvic pain in November 2008, Plaintiff underwent an ultrasound which revealed a portal vein aneurysm, though etiology of the menorrhagia was not identified. (*Id*. at PageID.866-68). A February 2009 abdominal CT scan confirmed a bilobed saccular aneurysm of a portal vein with no calcification. (*Id*. at PageID.862). No surgery was recommended based on the location of the aneurysm. (*Id*. at PageID.330). Later abdominal CT scans in January 2012 showed stable dilation of the portal vein. (*Id.* at PageID.712-14). A January 2013 abdominal MRI revealed the same stable asymptomatic portal vein aneurysm. (*Id.* at PageID.706).

A February 2009 sinus CT revealed acute sinusitis. (*Id*. at PageID.860). After complaining of coughing, wheezing, and shortness of breath, Plaintiff saw an allergist who diagnosed her with allergic rhinitis and asthmatic bronchitis in May 2009. (*Id.* at PageID.864). Plaintiff's complaints of daily headaches and bi-monthly migraines date to November 2009. (*Id.* at PageID.90-91). A January 2010 magnetic resonance angiograph ("MRA") of the head was normal. (*Id.* at

3

PageID.873). That same month, Plaintiff complained of vertigo with falling. She presented normal and was referred for further testing. (*Id*. at PageID.625-26).

In February 2010, she was treated at the hospital for headaches, dizziness, and nausea. Upon neurological examination, she presented normally, was treated symptomatically, and discharged after her symptoms subsided. (*Id*. at PageID.870-71). She sought more treatment at the hospital for nausea, vomiting, and diarrhea several days later. Her blood pressure was very low but leveled off with fluids. She was admitted in the intensive care unit for severe hypotension and gastroenteritis. After a couple of days of treatment, her symptoms subsided, and she was diagnosed with likely viral gastroenteritis. (*Id.* at PageID.328-32).

A few days later, she followed up with a neurologist and reported constant, throbbing headaches, that caused dizziness and falls. Her MRI and physical exam were normal, and she was prescribed Imitrex to treat her headaches. (*Id.* at PageID.541-43). Plaintiff followed up with another neurologist in June 2010 and reported continued headaches, nausea, vertigo, phonophobia, weakness, and migraine aura. She had a normal physical, normal neurological exam, and a normal MRI. She was prescribed Topomax and told to decrease Imitrex to prevent rebound headaches. (*Id*. at PageID.544-48). A month later, Plaintiff complained that Topomax made her headaches worse, so the neurologist recommended she stop taking Topomax and start taking Elvail. She still had normal physical and

4

neurological examinations. (*Id.* at PageID.550-51). During her follow up a month later, Plaintiff reported she did not start Elvail, as she feared taking antidepressants. Her headaches had improved on Topomax, though she still had daily mild headaches and severe headaches once every two weeks. She was prescribed Inderal and told to take Motrin for less severe headaches. (*Id.* at PageID.552).

In June 2013, Plaintiff saw Jaclyn Randel, M.D., to treat her migraines and asthma. She reported her symptoms subsided with an inhaler. She was prescribed fluids, antihistamines, and nasal sprays. Dr. Randel recommended she increase the frequency of asthma and migraine medication and take them daily if her symptoms continue. (*Id*. at PageID.360-62). Plaintiff saw Dr. Randel again in September 2013 for acute sinus and cold symptoms. She was prescribed Augmentin and referred to an otolaryngologist. (*Id*. at PageID.356-358). During a June 2014 follow up with Dr. Randel, Plaintiff reported she was sick for two weeks and had worsening asthma. She did not visit the otolaryngologist, because she did not know she was supposed to go. (*Id.* at PageID.348).

### C. The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 30, 2009, the alleged onset date. (*Id.* at PageID.68). At **Step 2**, the ALJ found that Plaintiff had the following severe

5

impairments before attaining age 22: migraine headaches and asthma. (*Id.*). At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments before attaining age 22. (*Id.* at PageID.70). **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity before attaining age 22 ("RFC")[1] and determined that Plaintiff had the RFC:

> to perform light work…except the claimant can never climb ladders, ropes, and scaffolds. The claimant can frequently climb ramps or stairs, stoop, kneel, crouch, or crawl. The claimant must avoid concentrated exposure to extreme heat, extreme cold, humidity, and environmental irritants such as fumes, odors, dusts, and gases. The claimant can tolerate exposure up to a moderate noise level. The claimant must avoid all use of hazardous machinery. The claimant must avoid all exposure to unprotected heights.

(*Id.* at PageID.71). At **Step 4**, the ALJ determined that Plaintiff had no past relevant work. (*Id.* at PageID.74). At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there were existing jobs in significant numbers within the national economy that Plaintiff could perform before attaining age 22, such as cashier, office clerk, and a stock clerk. (*Id.* at PageID.75). Thus, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, at any time before January 1,

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

6

2014, the date she attained age 22. (*Id.*).

### D. Framework for Disability Determinations

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the authority of the Social Security Act, the Social Security Administration has promulgated regulations that provide for the payment of disabled child's insurance benefits if the claimant is 18 years old or older and has a disability that began before attaining age 22. 20 C.F.R. § 404.350(a)(5). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; (4) can return to past relevant work; and (5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §§ 404.1520, 416.920.[2] The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, notwithstanding the claimant's impairment, he retains

---

[2] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless otherwise indicated.

7

the residual functional capacity to perform specific jobs existing in the national economy. *Richardson v. Sec'y of Health & Hum. Servs.*, 735 F.2d 962, 964 (6th Cir. 1984).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);

*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). That said, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

    **F.    Analysis**

    1. Plaintiff's Brief

The brief in support of Penner's motion for summary judgment is underdeveloped. Of the twenty-six-page brief, there are three pages of procedural history, fourteen pages summarizing hearing testimony, a page of "medical records

review," a standard of review page, and a two-page argument section. (ECF No. 12). After summarizing the process of disability determinations, Plaintiff's argument is roughly two paragraphs. Plaintiff fails to cite to the record. She only offers the ALJ's failure to assist in supplementing the record and his failure to give her complaints proper weight in support of her argument for remand. (*Id.* at PageID.923-24). Plaintiff's brief is so underdeveloped, that her arguments could be considered waived. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citations omitted).

The thinness of Plaintiff's argument is particularly troubling, considering Plaintiff's counsel, Patrick M. Carmody, Jr., has been warned many times of this very issue. Mr. Carmody has been cautioned his underdeveloped arguments were subject to waiver. *See Hayes Comm'r of Soc. Sec.*, 2013 WL 766180, at *7 (E.D. Mich. Feb. 4, 2013); *McAllister v. Comm'r of Soc.*, 2021 WL 646195, at *2-3 (E.D. Mich. Feb. 1, 2021), *report and recommendation adopted*, 2021 WL 634630 (E.D. Mich. Feb. 18, 2021); *Staples v. Comm'r of Soc. Sec.*, 2021 WL 3852744, at *7 (E.D. Mich. Aug. 9, 2021) ( "The Court once again warns Carmody again that his failure to cite evidence on his client's behalf can lead to disciplinary

proceedings and sanctions."), *report and recommendation adopted sub nom*. 2021 WL 3847760 (E.D. Mich. Aug. 27, 2021).

Further, Carmody's repeated failures to file sufficient briefs left him open to sanctions and possible investigations. *Getz v. Comm'r of Soc. Sec.*, 2019 WL 2710053, at *3 (E.D. Mich. June 10, 2019) ("his failure to cite evidence on his client's behalf is sanctionable and could lead to a referral to Michigan Attorney Grievance Commission for investigation.") *report and recommendation adopted*, 2019 WL 2647260 (E.D. Mich. June 27, 2019); *Aun v. Comm'r of Soc. Sec.*, 2020 WL 5223323, at *5 (E.D. Mich. Aug. 3, 2020) ("such perfunctory efforts…may result in sanctions or disciplinary action by the Court if substantial improvement is not shown in the future."), *report and recommendation adopted sub nom.*, 2020 WL 5209366 (E.D. Mich. Aug. 31, 2020). Like in *Swank v. Comm'r of Soc. Sec.*, 2020 WL 1139717, at *4 (E.D. Mich. Mar. 9, 2020), here the "'Argument' portion of [plaintiff's] twenty-five-page brief spans only two pages and primarily consists of perfunctory, over-generalized arguments and citations to law without any meaningful attempt at factual or legal analysis or citations to the record evidence."

For the reasons above, Plaintiff's arguments should be considered waived. Plaintiff has the burden of proof on her statements of error. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). Since Plaintiff failed to present fully developed arguments, she failed to show legal error would reverse the ALJ's

11

decision. Remand is not warranted. Even so, as the Commissioner engages with Plaintiff's claims, the undersigned will address them below.

Plaintiff appears to make two claims in support of remand. First, she contends the ALJ's failure in helping the Plaintiff obtain "significant medical records" to supplement the record is cause for remand. (ECF No. 12, PageID.923). She also asserts the ALJ did not give proper weight to the evidence that supports her allegations of disability, so his decision was not supported by substantial evidence. (*Id*. at PageID.923-24).

2. ALJ's Development of the Record

Plaintiff contends the ALJ should have done more in supplementing the record, because he has a responsibility to obtain medical records from a treating physician under 42 U.S.C. § 423(d)(5)(B). (*Id.* at PageID.920). The ALJ's failure to help Plaintiff obtain "significant medical records" is cause for remand. (*Id*. at PageID.923). The Commissioner argues the ALJ properly developed the record, by admitting evidence submitted by Dr. Randel after the hearing. Neither Plaintiff nor her attorney identified any other relevant evidence outstanding. (ECF No. 15, PageID.941).

The Commissioner must make "every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence." 42 U.S.C. § 423(d)(5)(B). For example, if the ALJ grants counsel

12

extra time to obtain outstanding records, the ALJ made a reasonable effort to obtain the records. *Robertson v. Comm'r of Soc. Sec.*, 513 F. App'x 439, 441 (6th Cir. 2013). The ALJ need not gather records himself. But the ALJ must gather records if he promises to do so. *Strang v. Comm'r of Soc. Sec.*, 611 F. App'x 271, 276 (6th Cir. 2015) (special duty to obtain records if duty is self-imposed). Further, if the claimant was represented by counsel, there is no heightened duty for the ALJ to develop the record. *Staymate v. Comm'r of Soc. Sec.*, 681 F. App'x 462, 468 (6th Cir. 2017). The burden to provide a complete record rests on the claimant. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (citing *Landsaw v. Sec'y of Health & Hum. Servs.*, 803 F.2d 211, 214 (6th Cir.1986)).

The ALJ made every reasonable effort to develop the record. After Plaintiff's counsel informed the ALJ that they were still waiting on records from Dr. Jaclyn Randel, the ALJ kept the record open thirty more days to allow Plaintiff time to submit. (ECF No. 9, PageID.88). As in *Robertson*, the ALJ here gave Plaintiff's counsel extra time to obtain outstanding records—a reasonable effort to develop the record. *Robertson*, 513 F. App'x at 441 (ALJ did not err by failing to obtain evidence when he gave counsel more time to gather records). The ALJ also assured Plaintiff's counsel that he could ask for more time if needed. (ECF No. 9, PageID.88-89). Plaintiff submitted outstanding records from Dr. Jaclyn Randel. (*Id*. at PageID.876-96). The ALJ considered these records in his determination.

13

(*Id*. at PageID.69-71).  Though Plaintiff refers to "numerous medical documents" that were "not received or considered," Plaintiff fails to identify what these documents are or point to any evidence that the ALJ learned of them.  In fact, when the ALJ asked if there were any outstanding records other than the Randel records, Penner said there were no other records.  (*Id*. at PageID.105).  The ALJ gave Plaintiff more time to supplement the record, received the new records, and considered them in his determination.

There was no special duty to develop the record here.  There is no evidence that the ALJ promised to obtain the records himself.  *Strang*, 611 F. App'x at 276.  Since Penner was represented by counsel, the ALJ had no heightened duty to develop the record.  *Staymate*, 681 F. App'x at 468.  The burden to provide a complete record rests with Plaintiff.  *Foster*, 279 F.3d at 357.  The ALJ made every reasonable effort to obtain medical evidence.  Remand on this issue in not warranted.

### 3. Evidence Supporting Plaintiff's Allegations of Disability

Plaintiff contends the ALJ did not give proper weight to the evidence that supports her allegations of disability, so his decision was not supported by substantial evidence.  (ECF No. 12, PageID.923-24).  Plaintiff's headaches, dizziness, nausea, vomiting, diarrhea, pelvic pain, and inability to regularly attend school serve as "compelling evidence" of significant impairments.  (*Id.* at

14

PageID.924). The Commissioner argues substantial evidence supports the ALJ's finding that Plaintiff could do a range of light work despite her impairments prior to age 22. (ECF No. 15, PageID.946).

SSR 16–3p sets forth the standard for evaluating alleged limitations using a two-step process. 2017 WL 5180304, at *3 (Oct. 25, 2017). First, the ALJ determines whether the claimant has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. *Id.* The ALJ found that Plaintiff's impairments could reasonably be expected to cause her alleged symptoms. (ECF 9, PageID.72).

Second, the ALJ must evaluate the intensity and persistence of alleged symptoms and determine whether the alleged symptoms limit the claimant's ability to work. SSR 16-3p at *3-4. When reviewing alleged symptoms, the ALJ must consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4; 20 C.F.R. §§ 404.1529(c)(3), 416.929.

In support of her allegations of disability, Plaintiff acknowledges the ALJ found severe impairments, but "he did not give proper weight to the supporting evidence of the record evidence of the numerous complaints and treatments that

15

the Claimant underwent for these multiple physical problems." (ECF No. 12, PageID.923). She cites her dizziness, nausea, vomiting, diarrhea, pelvic pain, and inability to regularly attend school as "compelling evidence" of significant impairments. (*Id.* at PageID.924). She contends "the evidence clearly supports" these difficulties cause more the minimal limitation in her activities.

Plaintiff does not cite where this "compelling evidence" can be found in the record. Even still, the ALJ discussed Plaintiff's treatment history and her testimony about her headaches, nausea, vomiting, diarrhea, pelvic pain, and missing school. (ECF No. 9, PageID.69-72). The ALJ found that while Plaintiff suffered from medically determinable impairments, her complaints about her symptoms were "not entirely consistent" with medical evidence and other evidence in the record. (*Id*. at PageID.72). Notably, her lack of testimony about her limitations before she turned 22 (*id.*), gaps in treatment during the relevant period (*id*. at PageID.72-73), normal physical exams (*id*. at PageID.73), normal MRI findings (*id*.), and the opinion of a state agency consultant (*id.* at PageID.74-75) conflicted with her allegations of disability. Plaintiff does not challenge the ALJ's finding or cite any records to support her subjective complaints. The ALJ's findings are well supported and explained, so the deference given to an ALJ's credibility determination is proper here. *Cruse v. Comm'r of Soc. Sec*., 502 F.3d 532, 542 (6th Cir. 2007) (ALJ's evaluation of the subjective claims entitled

16

to deference). Thus, substantial evidence supports the ALJ's evaluation of Plaintiff's subjective complaints and there is no cause for remand.

### G. Conclusion

Plaintiff has the burden of proof on her statements of error. *Walters*, 127 F.3d at 529. Plaintiff has not shown legal error that would upend the ALJ's decision. For these reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 12), **GRANT** Defendant's motion for summary judgment (ECF No. 15), and **AFFIRM** the Commissioner of Social Security's decision.

## II. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 2, 2022
            s/Curtis Ivy, Jr.
            Curtis Ivy, Jr.
            United States Magistrate Judge